[No. 9983-3-I.   Division One.   March 29, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD
BLEDSOE, *Appellant.*

*Raymond H. Thoenig* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Marilyn Pearson, Deputy,* for respondent.

DURHAM, J.—Richard V. Bledsoe appeals his conviction for first degree escape, claiming error in the denial of his motion to dismiss for violation of CrR 3.3, the speedy trial rule. Convicted of armed robbery in 1974, Bledsoe was serving his sentence at the Washington Center Work/ Training Release facility in King County. The following incidents are relevant:

| June 20, 1980 | Bledsoe escapes. |
| July 25, 1980 | Bledsoe arrested in Clark County on unrelated charges; at booking a hold from adult corrections is found. |
| September 3, 1980 | King County prosecutor files information charging Bledsoe with first degree escape; no–bail warrant issued. |
| November 21, 1980 | During Bledsoe's transfer to Shelton, Clark County officers discover the King County warrant. |
| December 15, 1980 | Bledsoe served with King County warrant and transferred to King County. |
| December 17, 1980 | Bledsoe arraigned in King County. |

The prosecutor calculated the time for speedy trial from November 21, the date Clark County became aware that Bledsoe was wanted in King County, and informed Bledsoe that the speedy trial period would expire January 29, 1981, 70 days after November 21. Bledsoe waived his speedy trial rights to February 26, 1981 without waiving his right to argue dismissal as to the January 29 expiration date.

The following unsigned and undated notation was penciled in on Bledsoe's King County criminal warrant information form, in the extradition information section: "ARRESTED BY CLARK CO. VANCOUVER WA." The trial court found that this entry could have been made at any time, including December 15, 1980 when Bledsoe was booked into the King County jail.

The only issue on appeal is if the trial court properly applied the speedy trial rule, CrR 3.3 (1978 version). Several Washington cases have addressed the question of delay between filing of charges and appearance before the court. Where such a delay has occurred, through no fault or connivance of the defendant, the Supreme Court has held that the speedy trial time period operates from the time the information is filed. *State v. Striker*, 87 Wn.2d 870, 557 P.2d 847 (1976). In the present case, the State argues that

this rule does not apply because Bledsoe was absent and unavailable until November 21. CrR 3.3(h) (1978) provides:

> If and in event the defendant is absent and thereby unavailable for trial or for any pretrial proceeding at which his presence is required, the time period specified in section (b) shall start to accrue anew upon defendant's being actually present in the county wherein the criminal charge is pending, and his presence appearing upon the record of the court.

Unavailability must be established by a showing of a good faith and diligent effort to locate the defendant. *State v. Peterson,* 90 Wn.2d 423, 585 P.2d 66 (1978). The question then becomes: did King County's issuance of the warrant after filing the information constitute a good faith and diligent effort to locate Bledsoe?

Bledsoe relies upon *State v. Alexus,* 91 Wn.2d 492, 588 P.2d 1171 (1979). In *Alexus,* a 6–month period elapsed between the filing of the information and the defendant's appearance in court. The court held that because the prosecutor made no effort at all to locate Alexus, who was in prison at Walla Walla at the time, the delay was not justified. That case, however, is factually distinguishable. The King County charges originated when Alexus confessed to a King County police detective while incarcerated in the Clark County jail awaiting sentencing on Clark County charges. *Alexus,* at 494. The warrant was accompanied by "criminal warrant information" forms, each of which indicated Alexus' incarceration in the Clark County jail. Therefore, King County law enforcement officials knew where Alexus was, although the prosecutor may not have known. There was no evidence that the prosecutor attempted to notify Alexus of the pending charges during the following 6 months. Bledsoe's situation is entirely different. After he escaped from the work release facility, Bledsoe's whereabouts were completely unknown. King County authorities had no reason to believe that he might be heading for Clark County, or would eventually end up incarcerated there.

A case more on point is *State v. Perry,* 25 Wn. App.

621, 612 P.2d 4 (1980), in which mailing a summons to the defendant's last known address and obtaining a warrant for his arrest was found to be sufficient demonstration of good faith and diligent effort, despite the fact that the defendant had moved and a phone call to his parents or his attorney would have disclosed his whereabouts. Officials in *Perry* seem to have made no greater effort to locate their defendant than King County authorities in the present case who had no reason to believe that Bledsoe was anything other than "at large" until November 21, 1980. Clark County authorities could not have discovered that Bledsoe was wanted for escape when he was booked on July 25, since the King County warrant was not issued until September 3. Clark County officials also had no occasion to discover Bledsoe's status until he was transferred to Shelton when, as part of routine "booking–out" procedures, a warrant check was performed. Thus, as far as King County authorities were concerned, Bledsoe was "absent and thereby unavailable" at least until November 21. CrR 3.3(h) (1978). We are satisfied that the effort made by King County under the facts here amounted to a good faith and diligent effort.

We note that starting the speedy trial period from that date gave Bledsoe the benefit of the doubt, since the rule states that the period should begin "anew upon defendant's being *actually present* in the county" where he is charged. (Italics ours.) CrR 3.3(h) (1978). Bledsoe was not actually present in King County until December 15, 1980. *Cf. State v. Kubitz,* 29 Wn. App. 767, 630 P.2d 1377 (1981) (CrR 3.3 time limits began to run when defendant was back in jurisdiction before the court, not when foreign jurisdiction announced his availability).

Bledsoe also argues that under CrR 3.3(h) (1978), a defendant is not considered absent when he is being held and confined by authority of the State of Washington. He is at that time available for prosecution by virtue of confinement under that authority. Thus, CrR 3.3 time limits may not be excused if, due to administrative ineffectiveness, one state jurisdiction or agency fails to communicate a defend-

ant's location to another.

If Bledsoe's position were adopted, King County authorities would have had to check with 38 other counties and countless municipalities across the state to determine if Bledsoe was in jail somewhere. This would have to be done frequently, according to Bledsoe, for an escaped convict might be arrested anytime. The law obviously does not require so burdensome a duty. It is also interesting to note that had King County postponed filing the escape information until November 20, 1980, which it easily could have done, there never would have been a CrR 3.3 problem. The State should not be required to delay filing charges until the location of the defendant is about to be, or is, discovered. Charges should be filed and a good faith and diligent effort made to locate the defendant. In an escape situation, issuance of a warrant may constitute such an effort. In this case, King County was required to do no more. *State v. Perry, supra.*

Affirmed.

ANDERSEN, C.J., and SWANSON, J., concur.

Reconsideration denied April 27, 1982.

Review denied by Supreme Court July 16, 1982.